USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: JUL 24 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

WELLS FARGO BANK, N.A..,

              Interpleader Plaintiff,

-v-

ESM FUND I, LP, ET AL,

              Interpleader Defendants.

-------------------------------------------------------------------- X

10 Civ. 7332 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    The facts and procedural history of this case pertinent to this decision are discussed in full in the Court's March 29, 2011, order granting judgment on the pleadings (D.E. 81 (Sand, J.)) and Magistrate Judge Dolinger's April 3, 2012, Report and Recommendation (D.E. 145) (the "R&R") recommending that a stay pending appeal be granted, and the Court assumes general familiarity with these decisions. *Pro se* Interpleader Defendants David Visher and Alexander Bakal have submitted objections to the R&R, which the Court here considers. The Court adopts the R&R in full and GRANTS the stay pending appeal.

I.     **STANDARD OF REVIEW**

    This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1). This Court reviews de novo those parts of the report and recommendation to which objections are made, and reviews the remainder for clear error on the face of the record. 28 U.S.C. § 636(b)(1); *N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors, Inc.*, 657 F. Supp. 2d 410, 414 (S.D.N.Y. 2009); *see also In re Gushlak*, 2012 U.S. Dist. LEXIS 60342, at *4 (E.D.N.Y. Apr. 30, 2012). If

a party makes only generalized or conclusory objections, or simply reiterates his original arguments, the Court reviews a magistrate judge's report and recommendation for clear error. *Perimeter Interiors, Inc.*, 657 F. Supp. 2d at 414; *Fabricio v. Artus*, 2009 U.S. Dist. LEXIS 20442, at *3 (S.D.N.Y. Mar. 12, 2009). Courts generally do not consider new arguments or new evidence raised in objections to a magistrate judge's report and recommendation that were not presented to the magistrate judge. *Jones v. Smith*, 2012 U.S. Dist. LEXIS 64032, at *21-22 (S.D.N.Y. May 7, 2012); *see also Azkour v. Little Rest Twelve, Inc.*, 2012 U.S. Dist. LEXIS 42210, at *7-8 (S.D.N.Y. Mar. 27, 2012); *Chalasani v. Daines*, 2011 U.S. Dist. LEXIS 113650, at *4 n.3 (E.D.N.Y. Sept. 26, 2011). A court should read a *pro se* petitioner's pleadings liberally, and consider the strongest argument they suggest. *Fabricio*, 2009 U.S. Dist. LEXIS 20442, at *3.

A determination to stay enforcement of a judgment pending appeal is an exercise of judicial discretion depending on the circumstances of the case and requires consideration of whether the appellant has shown a substantial possibility of success on appeal, whether the appellant will be irreparably harmed absent a stay, the balance of hardships, and the public interest. *See Tecnimed SRL v. Kidz-Med, Inc.*, 763 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (party seeking a stay must show a "substantial possibility" of success on appeal, but the required showing of this possibility varies according to the strength of other factors). A party need not show a high likelihood of success if it can demonstrate that the balance of hardships tips decidedly in its favor. *See, e.g., Thapa v. Gonzales*, 460 F.3d 323, 336 (2d Cir. 2006) ("As to the question of irreparable harm, this Circuit has granted a stay pending appeal where the likelihood

of success is not high but the balance of hardships favors the applicant." (quotation marks omitted)); *see also Red Earth LLC v. United States,* 657 F.3d 138, 143 (2d Cir. 2011).[1]

## II. SUBSTANTIAL POSSIBILITY OF SUCCESS

The question that the Second Circuit will be confronted with on appeal is whether the language of the Pooling and Servicing Agreement ("PSA") governing the investment trust is ambiguous, requiring that the district court's decision be reversed. "Ambiguous language is language that is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir. 2000) (quotation marks omitted; alterations in the original).

Visher and Bakal's first objection to the R&R is that it improperly determined that Interpleader Defendant Assured Guarantee Municipal Corp. ("Assured") presented at least a colorable case that it may prevail on appeal, arguing that Assured's arguments are "frivolous." (Obj. at 1-2). In doing so, they recite essentially those reasons underlying the decision to grant judgment on the pleadings in favor of the certificate-holders, and do not address the arguments in favor of Assured's position.

The Court has reviewed the relevant papers, including both the memoranda of law on the merits and those papers in support and opposition to the stay, and agrees with the magistrate judge's determination that Assured has raised colorable arguments suggesting a possibility it will prevail on appeal. Even if it did not carry the day in front of this Court (*see* D.E. 81 (Sand, J.)),

---

[1] Visher and Bakal do not object that the magistrate judgment improperly identified the governing law, but rather challenge his determinations under these standards on likelihood of success and the balance of hardships, and the parties did not dispute these points of law in litigating the motion for a stay.

Assured set forth a substantial textual argument that it is entitled to priority of payment under § 4.02(a)(3) based on the definition of "Aggregate Certificate Insurer Reimbursement Amount," as covering "any amount owing to the Certificate Insurer . . . for reimbursement, with interest, for claims paid with respect to the . . . Certificates under the Certificate Insurance Policy." (D.E. 51 at 11-17). It further puts forward a significant argument that the interpretation of the PSA that the district court adopted reads § 4.02(a)(3) out of the PSA, rendering it ineffectual. *See Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 468 (2d Cir. 2010) (explaining that a contract should be read as a whole to ensure that undue emphasis is not placed on particular words and phrases and to avoid an interpretation that would render a provision superfluous). Given the standard for demonstrating that a contract is ambiguous, Assured has raised serious questions for appeal.

### III. BALANCE OF THE HARDSHIPS

#### A. Harm to Assured

The Court agrees with the magistrate judge's determination that Assured may suffer substantial irreparable harm should the funds be distributed from escrow because it may not be able to recover the funds to which it is entitled if they are distributed to the certificate-holders.

The certificate-holders argued to the magistrate judge, and Visher and Bakal again claim here, that if Assured prevails on appeal it can recoup the funds it is owed by either effectuating a clawback (Obj. at 3-4) or waiting for funds to be accumulated and disbursed from the trust under the waterfall (Obj. at 5-6). On the argument that a clawback could sufficiently protect Assured, no party has objected to the magistrate judge's determination that Assured may only clawback distributed funds for a year after their date of distribution. (R&R at 12; Abensohn Decl. Ex. 2). Indeed, even in Visher and Bakal's objections, they argue only that Assured may be able to

4

recover a third of the roughly $150 million to which it claims it is entitled through a clawback, not that it is permitted to extend the clawback to previous years or that a clawback could recover all of the funds to which Assured would be entitled should it prevail on appeal. (Obj. at 4).

As to the argument that the trust will generate sufficient funds to pay Assured, there are at least three problems with this position. First, as the magistrate judge explained, this position is based on speculation that the trust will continue to perform adequately to generate funds sufficient to pay Assured's claim. Second, this concern is compounded by the fact that if the judgment is not stayed pending appeal, even those funds that are acquired by the trust will be distributed through the payment waterfall and, therefore, would not be available to Assured should it prevail on appeal. In other words, even to the extent that the trust continues to bring in funds, allowing distribution of the funds can only continue to diminish the funds available to pay Assured should it prevail on appeal. In contrast, maintaining the status quo and holding the funds in escrow poses no risk—to any party—that the funds will not be distributed to them as required once this case reaches a final disposition. *See e.g., Life Ins. Co. of N. Am. v. Camm*, 2007 U.S. Dist. LEXIS 64454, at *3 (S.D. Ind. Aug. 30, 2007) (stays pending appeal are not unusual in interpleader cases because the funds are already held in escrow); *cf., e.g.*, Fed. R. Civ. Proc. 62(d); *Palm Props., LLC v. Metro. Nat'l Bank*, 2010 U.S. Dist. LEXIS 90408, at *7 (E.D. Ark. July 22, 2010) ("In an interpleader case, such as here, the court has the disputed funds already in its possession so that all parties are protected from risk."); *In re Winimo Realty Corp.*, 2004 U.S. Dist. LEXIS 25922 (S.D.N.Y. Dec. 22, 2004) ("[T]he Stay Order requires the segregation of funds into an escrow account, along the lines of the protection provided by a supersedeas bond."); *Chase Manhattan Bank v. Motorola, Inc.*, 184 F. Supp. 2d 384, 395 (S.D.N.Y. 2002) (directing that funds be held in escrow pending disposition of appeal, in lieu of

a supersedeas bond). Third, as the magistrate judge noted, distributing the funds from escrow essentially thwarts the right of priority that Assured is asserting and which is the focus of this case and Assured's appeal. Even assuming that the trust will eventually generate funds sufficient to pay the amounts owed to Assured, distributing the funds now will effectively defeat any potential victory Assured may achieve in this case by requiring it to wait for sufficient additional monies to be accumulated by the trust to pay the amounts owed.

Turning to the specific objections that Visher and Bakal raise, they first offer an argument that the Court can mathematically quantify the harm to the parties by multiplying the harm a party may suffer by its likelihood of prevailing on appeal. (Obj. at 2-3). The Court does not agree that it can strictly apply any rigorous mathematical approach for balancing the hardships in this case,[2] but agrees with Visher and Bakal's general point that, as noted above, Assured must make a proportionately greater showing of harm to counterbalance any weaknesses in its appellate case.

The fundamental problem with Visher and Bakal's argument that the harms Assured will suffer are not substantial is that they improperly attempt to redirect that Court's focus from the actual harm that Assured may suffer to the interest Assured is earning while the funds are in escrow. Specifically, Visher and Bakal advance an argument that "the appropriate question [is] not whether there is a theoretical potential for Assured not to get its money back but whether 5.25 % . . . is [an] appropriate interest rate to compensate Assured for th[is] uncertainty." (Obj. at 4). The Court does not agree that this is the "appropriate question." That Assured may be

---

[2] In particular, even were the Court to accept that it could proceed with such mathematical precision, it does not agree that it is appropriate to rely on pure speculation as to what any extrinsic evidence will show at trial and ascribe each party a 50% chance of success. (Obj. at 3)

accruing interest on the funds held in escrow is an entirely separate issue from their claim that it may be entirely unable to collect at least some portion of this money if the funds are distributed.

Even setting aside that this is not the proper comparison, this argument is flawed for other reasons, including that Visher and Bakal present no clear evidentiary support. They argue that a security that they claim is "similar but substantially inferior to Assured's claim" recently traded with a return of approximately 7.5 %. Thus, they argue that the interest rate Assured receives while the funds are in escrow undercompensates Assured by only a few percentage points. However, in addition to failing to present this evidence or argument to the magistrate, *see Jones*, 2012 U.S. Dist. LEXIS 64032, at *21-22, even in their objections they still provide no evidentiary foundation for the Court to assess these claims. Moreover, they are effectively offering unqualified expert opinion, rather than evidence based on personal knowledge. *See, e.g.*, Fed. Rule Evid. 602 (requiring personal knowledge); Fed. R. Evid. 701(a) (lay opinion testimony must be based on the witness's perception); Fed. R. Evid. 702; *United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (lay opinion testimony must be based on the witness's perception and personal knowledge is required).

**B.    Harm to the Certificate-holders**

Visher and Bakal also argue that the certificate-holders will suffer substantial harms if the case is stayed. For the reasons explained below, the Court does not believe that maintaining the status quo and letting the funds remain in escrow generates harms to the certificate-holders similar in magnitude to those Assured would face if the funds were to be distributed.

1.    "Exposure" to Wells Fargo

Visher and Bakal claim that the stay prejudices them by exposing them to a risk that Wells Fargo may go "belly up" and they may lose the funds in the escrow account that Wells

7

Fargo is maintaining. (Obj. at 8-11). This argument and evidence was not presented to the magistrate judge. *See Jones*, 2012 U.S. Dist. LEXIS 64032, at *21-22. However, even considered for what it is worth, all Visher and Bakal have offered is speculation that Wells Fargo could hypothetically collapse based on the collapse of Lehman Brothers and AIG, and an argument that investors in Wells Fargo demand a higher rate of return on Wells Fargo bonds than Visher and Bakal are receiving on the escrowed funds. (Obj. at 8-9). *See, e.g., Tyco Healthcare Group LP v. Ross*, 2011 U.S. Dist. LEXIS 49867, at *15 (D. Conn. May 10, 2011); *Canon Inc. v. GCC Int'l, Ltd.*, 450 F. Supp. 2d 243, 256 (S.D.N.Y. 2006) (assertions of hardship were mere speculation). They further have not demonstrated that they would be unable to recover the funds from escrow, even if they had proved it is likely that Wells Fargo will go "belly up"—and escrow is, of course, not the equivalent of having a "bond" in Wells Fargo. Finally, as Wells Fargo points out in response (Wells Fargo Resp. at 2-3), if Visher and Bakal objected to the form of the escrow, they could have done so long ago—at the commencement of this litigation—but instead were apparently comfortable with 18 months of exposure to Wells Fargo, substantially undercutting their claim that this exposure is a serious concern.[3]

The Court notes that this argument is the sole contention of harm that Visher and Bakal present that suggests a comparable harm to that which may befall Assured—the risk of substantial non-payment of the funds held in escrow. In all of Visher and Bakal's other arguments, the harms that that they allege they may suffer are that they are temporarily disadvantaged in their investment positions, not a threat that they will be entirely denied some or all the escrowed funds. As such, the alleged harms to the certificate-holders by maintaining the

---

[3] The Court does not read this argument as a request that the funds be placed in escrow to the Court rather than held in escrow by Wells Fargo, and such argument was not raised before the Magistrate Judge.

status quo and holding the money in escrow do not appear to be of a similar magnitude of the harm that Assured may face.

2. "Locked-In" Exposure to the Underlying Mortgages

Visher and Bakal argue that, by virtue of the stay, they have a "locked-in exposure" to the mortgages underlying their notes. In particular, they claim that they cannot freely sell their certificates if the Court grants a stay, because they must hold the certificates to receive their escrowed funds. (Obj. at 11-12). However, Visher and Bakal are free to sell their certificates and negotiate for compensation sufficient to cover the funds that would be paid out of escrow or to reserve their rights to those funds. Indeed, this was part of the premise of their argument to the Court that the escrowed funds should be paid to current owners of the certificates, rather than past holders. (D.E. 119 at 11; *see also* D.E. 112 at 7-9). Moreover, at least Mr. Bakal apparently bought the certificates at issue during the pendency of this litigation, when the funds were in escrow, undercutting any claim that maintaining the funds in escrow while the case is on appeal causes him substantial harm. (9/12/12 Tr. at 41).

3. Settlement Considerations

Visher and Bakal maintain that they will "support a settlement with Assured that includes $ 15 million more in cash for Assured if a stay is granted than if it is not." (Obj. at 11; *see also* D.E. 148 at ¶ 9; D.E. 147 at ¶ 7). Again, this argument and evidence was not presented before the magistrate judge. *See Jones*, 2012 U.S. Dist. LEXIS 64032, at *21-22. Regardless, the Court does not accept Visher and Bakal's claim that this is a "highly objective measure of [their] perception of" harms they will suffer from a stay (Obj. at 11), as it merely constitutes their opinion, not evidence, of the magnitude of the harms they face.

4. Possibility of More Profitable Investments

9

Finally, Visher and Bakal argue that holding the funds in escrow decreases their ability to profit from reinvestment of these funds, essentially claiming that they are being deprived of the time-value of their money. This argument comes in two strains: first, they claim that holding the funds in escrow diminishes the returns on those funds (Obj. at 7-8); second, they argue that they could use the escrowed funds to pay down debt, which they claim is virtually risk-free (Obj. at 10-11). Once again, much of the specific argument and evidence that they present—particularly regarding using the escrowed funds to pay down debt—was simply not before the magistrate judge. (Obj. at 7, 10-11). Regardless, the Court concludes that the certificate-holders' temporary loss of the time-value of their money while it remains in an interest-accruing escrow account is substantially outweighed by the harms Assured may suffer if the funds are distributed.

## CONCLUSION

No other party has objected to the R&R and the Court does not detect clear error in its decision. The Court also does not find, on de novo review of the objections raised by Visher and Bakal, any error in the magistrate judge's decision to grant a stay pending appeal. The Court therefore adopts the R&R in full.

Dated: July 24, 2012
New York, New York

_____
ALISON J. NATHAN
UNITED STATES DISTRICT JUDGE