UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., solely in its capacity as Trust Administrator,<br><br>     Interpleader Plaintiff,<br><br>    -against-<br><br>ESM FUND I, LP, COMPASS SAV LLC, COMPASS OFFSHORE SAV PCC LTD., ESM MANAGEMENT LLC, ESM INVESTORS LTD., DAVID VISHER, ALEXANDER BAKAL, JEAN DAVID ITTAH, ORION PARTNERS LLC, FINANCIAL SECURITY ASSURANCE INC. (n/k/a ASSURED GUARANTY MUNICIPAL CORP.), CEDE & CO., as a registered Holder of certain Certificates and nominee name of the Depositary Trust Company, and DOES 1 through 100, beneficial owners of certain Certificates,<br><br>     Interpleader Defendants. | Case No. 10-cv-7332<br><br>Judge Alison J. Nathan<br><br>Magistrate Judge Michael H. Dolinger |

**MEMORANDUM OF FINANCIAL SECURITY ASSURANCE INC.
(N/K/A ASSURED GUARANTY MUNICIPAL CORP.) IN OPPOSITION
TO MOTION FOR RELIEF PURSUANT TO RULES 23 AND 83**

              Philippe Z. Selendy
              Adam M. Abensohn

              QUINN EMANUEL URQUHART
              & SULLIVAN LLP
              51 Madison Avenue, 22nd Floor
              New York, New York 10010
              (212) 849-7000

              *Attorneys for Interpleader Defendant*
              *Financial Security Assurance Inc.*
              *(n/k/a Assured Guaranty Municipal Corp.)*

**TABLE OF CONTENTS**

<u>Page</u>

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT ..........................................................................................................................4

A.  This Is Not A Class Action, And Counsel For The ESM Parties Does Not Represent Any Other Certificateholder. ..............................................................4

B.  The ESM Parties Fail To Show Or Even Allege Wrongdoing On The Part Of Assured. ................................................................................................................7

CONCLUSION .....................................................................................................................11

## TABLE OF AUTHORITIES

**Page**

### Cases

*Amchem Products, Inc. v. Windsor*,
 521 U.S. 591 (1997)......................................................................................................6

*Christensen v. Kiewit-Murdock*,
 815 F.2d 206 (2d Cir. 1987)..........................................................................................5

*Doe v. Bush,*
 261 F.3d 1037 (11th Cir. 2001) .................................................................................5, 6

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981)........................................................................................................9

*Landesbank Baden- Wurttemberg v. Goldman, Sachs & Co.*,
 821 F. Supp. 2d 616 (S.D.N.Y. 2011).........................................................................10

*Navarro-Ayala v. Hernandez-Colon*,
 951 F.2d 1325 (1st Cir. 1991)...................................................................................5, 6

*Peck v. Aponte*,
 880 F. Supp. 184 (S.D.N.Y. 1995) ...............................................................................8

*Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l Inc.*,
 455 F.2d 770 (2d Cir. 1972)..........................................................................................5

*Weinberger v. Kenderick*,
 698 F.2d 61 (2d Cir. 1982)............................................................................................8

*Wells Fargo Bank, N.A. v. ESM Fund I, LP*,
 785 F. Supp. 2d 188 (S.D.N.Y. 2011).......................................................................2, 5

### Other Authority

Fed. R. Civ. P. 23..................................................................................................3, 4, 7, 11

Fed. R. Civ. P. 83........................................................................................................3, 4, 11

N.Y. Ethics Op. 478,
 1978 LW 14141 (N.Y. State Bar Assn. Comm. Prof. Eth. Jan. 25, 1978) ..............................7

N.Y. R. Prof. Conduct 4.3..................................................................................................7

Interpleader Defendant Financial Security Assurance Inc. (n/k/a Assured Guaranty Municipal Corp.; hereinafter, "Assured") respectfully submits this memorandum of law in opposition to the motion of ESM Fund I, LP, Compass SAV LLC, Compass Offshore SAV PCC Ltd., and ESM Management LLC (collectively, the "ESM Parties"), to monitor or restrict Assured's communications with certificateholders.

## INTRODUCTION

The ESM Parties never moved to certify a class and did not appeal the dismissal of the claims on which their allegations for class certification were based.  Counsel to the ESM parties does not even represent all certificateholders that are actively participating in this litigation.  Nevertheless, the ESM Parties request that this Court monitor Assured's communications with any and all certificateholders, and that counsel for the ESM Parties be permitted to participate in all such communications, on the purported basis that this is an incipient class action.  There is no authority, and no legal principle, to support such relief.  As part of their effort, moreover, the ESM Parties baselessly impugn a neutral invitation from Assured to conduct settlement discussions, while ignoring that they themselves have reached out to certificateholders in precisely the manner they now deem improper.  This application represents an unwarranted attempt by the ESM Parties to insert themselves, and their counsel, into discussions freely undertaken by separate entities that have not requested their involvement and whom they do not represent.  The application should be denied.

## BACKGROUND

On September 23, 2010, Wells Fargo Bank, N.A. ("Wells Fargo") filed an interpleader complaint (the "Complaint"), in its capacity as Trust Administrator, seeking a determination as to the proper distribution of funds pursuant to the Trust payment waterfall in the governing Pooling and Servicing Agreement ("PSA").  Defendants, including Assured, the ESM Parties,

1

and the *pro se* defendants (the ESM Parties, with the *pro se* defendants, the "Certificateholder Defendants"), filed answers, and the Certificateholder Defendants asserted cross-claims against Assured. The ESM Parties alleged that their cross-claims were brought as a class action. (ESM Answer & Cross-cl. ¶ 59, Oct. 29, 2010 (doc. no. 34) ("Crossclaim Plaintiffs, the ESM Parties, bring this action as a class action….")).[1] On December 3, 2010, Assured filed a motion for judgment on the pleadings and a motion to dismiss the cross-claims. (Assured Mot. for J. on Pleadings, Dec. 3, 2010 (doc. nos. 50-52)). The Certificateholder Defendants opposed Assured's motion and also filed their own motions for judgment on the pleadings.

This Court (Sand, J.) issued its Opinion on March 29, 2011, denying Assured's motion for judgment on the pleadings, granting the Certificateholder Defendants' cross motions, and dismissing all cross-claims against Assured, including the claims that provided the basis for the ESM Parties' class action allegations. *Wells Fargo Bank, N.A. v. ESM Fund I, LP*, 785 F. Supp. 2d 188, 198-99 (S.D.N.Y. 2011). As directed by the Court, Wells Fargo submitted a proposed judgment on April 12, 2011. On December 13, 2011, this Court entered Judgment, including an award of attorneys' fees to the ESM Parties pursuant to the common fund doctrine. (Order & J., Dec. 13, 2011 (doc. no. 125)). By agreement between the parties, the Court stayed the Judgment pending decision on Assured's motion for a stay pending appeal. (Stip. for Temporary Stay of J., Apr. 19, 2011 (doc. no. 87); Order & J. ¶ 10). Assured filed its appeal on January 6, 2012, and, on July 27, 2012, this Court granted Assured's motion for a stay. (Order 10, July 24, 2012 (doc. no. 152)).[2]

---

[1] All allegations concerning class certification are under the heading of "CROSSCLAIMS AGAINST FINANCIAL SECURITY ASSURANCE, INC." (ESM Answer & Cross-cl. 12, ¶¶ 59-67).

[2] In their opposition to Assured's stay motion, the *pro se* defendants raised the prospect of settlement. Specifically, as this Court noted, "Visher and Bakal maintain that they will

On July 31, 2012, Assured requested that Wells Fargo post a notice to all certificateholders, including those certificateholders that have participated in this litigation and those that have not, stating that Assured is interested in pursuing settlement discussions. (Decl. of Laura E. Krabill in Supp. of ESM Mot. for Relief Under Rules 23 & 83, Aug. 29, 2012 (doc. no. 155) ("Krabill Decl.") Ex. 4). The notice provides the docket numbers for this case in this Court and in the Second Circuit, gives the reporter citation for this Court's opinion on the merits, and advises that the case is now on appeal. *Id.* Counsel for Wells Fargo requested confirmation from counsel for Assured that counsel was aware of the request that the notice be posted, which counsel for Assured provided. (Krabill Decl. Exs. 2-3). Counsel for the ESM Parties requested that Wells Fargo not post the notice, but Wells Fargo did so. (Krabill Decl. ¶¶ 8-9). During several communications with Assured's counsel, counsel for the ESM Parties asserted a right to participate in any settlement discussions with other certificateholders, but cited no authority supporting this purported right. (Krabill Decl. Ex. 7).

The ESM Parties have since filed the present motion, in which they argue that the Court should "monitor" any discussions between Assured and certificateholders. As part of this proposed monitoring, the ESM Parties propose several "restrictions or limitations" on Assured, including, i) that Assured be directed to invite the ESM Parties to participate in all discussions with other certificateholders, ii) that Assured be required to provide certificateholders with a notice prepared by the ESM Parties, and approved by the Court, setting forth the ESM Parties' "analysis of the PSA and this Court's ruling," and iii) that Assured be directed to "ask certificateholders to allow Assured to record any oral conversations" and provide the recordings to the ESM Parties and the Court within 5 days. (ESM Mem. of Law in Supp. of Mot. for Relief

---

'support a settlement with Assured that includes $15 million more in cash for Assured if a stay is granted than if it is not.'" Order 9, July 7, 2012 (doc. no. 152)).

3

Under Rules 23 & 83 at 23, Aug. 29, 2012 (doc. no. 156) ("Mem.")). As set forth below, the ESM Parties fail to identify any legal doctrine to support this extraordinary intrusion into discussions freely entered into between Assured and other certificateholders, and their motion should be denied.

## ARGUMENT

The ESM Parties fail to demonstrate any basis for the relief they seek. *First*, the ESM Parties concede that this action has not been certified as a class action. (Mem. 11). As a result, the ESM Parties do not represent—and their counsel does not speak for—any other certificateholder. There is no basis, therefore, for the ESM Parties to insert themselves into discussions between Assured and any other entity. *Second*, the ESM Parties have failed to show any hint of wrongdoing on the part of Assured, and indeed there has been none. In fact, the ESM Parties admit that they have engaged in precisely the sort of unrestricted outreach to certificateholders that they are now asking this Court to prohibit when pursued by Assured. The ESM Parties' bald speculation that Assured "may" mislead certificateholders in the future, moreover, is not a proper basis for the ESM Parties to impose on this Court to "monitor" discussions into which Assured and other certificateholders may freely choose to enter.

### A. This Is Not A Class Action, And Counsel For The ESM Parties Does Not Represent Any Other Certificateholder.

The ESM Parties rest their motion on Rule 23 of the Federal Rules of Civil Procedure and rely almost entirely on principles that apply specifically in the class action context. The problem with this approach is revealed in the first sentence of the argument section in their brief: The ESM Parties contend that "*[d]espite the fact that this case was not formally certified as a class action with the ESM Parties serving as class representatives,* the proceedings and the Court's rulings and judgment provide what is, in essence, class relief." (Mem. 11). But this is not a class

4

action—"in essence" or otherwise. Not only are the ESM Parties not a class representative, as they concede, there are not even any *allegations* that could support a class now that the ESM Parties' cross-claims have been dismissed—a ruling they did not seek to appeal. *See Wells Fargo Bank*, 785 F. Supp. 2d at 199. Nor have the ESM Parties cited any authority to support their contention that the award of fees from a common fund could create a quasi-class action.

Even if this were a class action, and plainly it is not, the ESM Parties would not be entitled to the relief they are proposing. As the Second Circuit has explained, "prior to class certification, defendants do not violate Rule 23(e) by negotiating settlements with potential members of a class." *Christensen v. Kiewit-Murdock,* 815 F.2d 206, 213 (2d Cir. 1987). Indeed, a party "has no legally protected right to sue on behalf of other[s] who prefer to settle." *Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l Inc.*, 455 F.2d 770, 775 (2d Cir. 1972) (Friendly, J.). Thus, Assured is fully entitled to enter into discussions with certificateholders who elect to participate, and there is no legal standard—including the inapplicable legal standards that the ESM Parties attempt to import from the class action context—that would support any different result.

The ESM Parties' cited authority is easily distinguished. In *Doe v. Bush* (Mem. 15), for instance, class certification was litigated, and a magistrate judge recommended it be granted; "the district court either forgot to address the certification question . . . or determined that it was not necessary to do so." 261 F.3d 1037, 1050-51 (11th Cir. 2001). There has been no such recommendation of class certification here, and no claim that the District Court "forgot" to address the issue. In the other cases the ESM Parties cite (Mem. 15), the court granted relief on the class-based claims without certifying the class. *See also Doe*, 261 F.3d at 1049-50 (citing cases in which class-based claims were granted without formal class certification); *Navarro-*

5

*Ayala v. Hernandez-Colon*, 951 F.2d 1325, 1334 (1st Cir. 1991) (recognizing lawsuit as class action "because this case was instituted by a complaint seeking class relief, implicitly granted class relief, and was conducted for years as a de facto class action").[3]  Here, by contrast, the only allegations that could have supported class-based claims were dismissed.  Thus, no "implied class" possibly exists.

Further, there is no basis to assume, as the ESM Parties appear to, that this action would have been appropriate for class certification, despite the Court's dismissal of the cross-claims that were purportedly asserted on a class basis.  While the ESM Parties alleged in support of their dismissed cross-claim that the interests of all uninsured certificateholders were aligned, there are significant respects in which that is not the case.  For instance, the ESM Parties have argued before the Court that funds now held in escrow should be distributed on the basis of each certificateholder's total holdings as of the distribution date, and not on the basis of holdings as of the onset of the litigation. (ESM Opp'n Br. to Wells Fargo Proposed J. 13-17, May 4., 2011 (doc. no. 92)).  This is an argument that favors those certificateholders who have increased their holdings over the course of this litigation and disfavors those certificateholders that have sold a portion of their holdings, and would thus render the ESM Parties ill-suited to speak on behalf of the entire class they purported to describe in their cross-claims.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (affirming denial of class certification in part because "[i]n significant respects, the interests of those within the single class are not aligned.").

---

[3]   The ESM Parties cannot plausibly claim that this action has proceeded as a "de facto class action."  *See Navarro-Ayala*, 951 F.2d at 1334 (1st Cir. 1991). The ESM Parties have not submitted briefs on behalf of any other entity, much less on behalf of all uninsured certificateholders.  In fact, the *pro se* defendants have participated fully in this litigation, and spoken on their own behalf, through the submission of numerous pleadings.  (*See*, *e.g.*, Notice of Appearance by Alexander Bakal (doc. no. 27); Notice of Appearance by David Visher (doc. no. 28); Mem. of Law in Supp. of Mot. for J. on Pleadings by David Visher (doc. no. 65); Mem. of Law in Supp. of Mot. for J. on Pleadings by Alexander Bakal (doc. no. 66)).

In any event, as the ESM Parties concede repeatedly, this is not a class action; all of the standards and case law they invoke under Rule 23 ("Class Actions") are therefore irrelevant. Even if this were a class action, moreover, there would be no legal basis for the ESM Parties to prohibit or restrict Assured in its discussions with certificateholders. Simply stated, any certificateholder that chooses to enter into discussions with Assured should be free to do so. The motion should be denied.

B. **The ESM Parties Fail To Show Or Even Allege Wrongdoing On The Part Of Assured.**

The motion fails for the added reason that the ESM Parties do not, because they cannot, suggest that Assured has done anything improper. The New York Rules of Professional Conduct expressly permit settlement negotiations between the attorney of a represented party and unrepresented parties:

> This Rule does not prohibit a lawyer from negotiating the terms of a transaction or settling a dispute with an unrepresented person. So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may inform the person of the terms on which the lawyer's client will enter into an agreement or settle a matter, prepare documents that require the person's signature, and explain the lawyer's own view of the meaning of the document or the lawyer's view of the underlying legal obligations.

N.Y. R. Prof. Conduct 4.3, Cmt. 2. Under New York's Code of Professional Responsibility, as the ESM Parties recognize, it is only the giving of advice to unrepresented adverse parties that is forbidden. N.Y. Ethics Op. 478, 1978 LW 14141 (N.Y. State Bar Assn. Comm. Prof. Eth. Jan. 25, 1978) ("The Code of Professional Responsibility does not forbid all manner of communication between a lawyer and an adverse party unrepresented by counsel. That which is forbidden is the giving of advice.").

The ESM Parties identify no basis to suppose that Assured or its counsel has or will violate these standards. This is critical since the ESM Parties acknowledge that, even under

7

standards that apply in class actions (which this is not), a party is free to pursue settlement with putative class members, without any limitations being imposed absent evidence of misconduct. (Mem. 19). The ESM Parties can only speculate that "Assured's communications with unrepresented parties *may* be false or misleading or *could* result in certificateholders obtaining an inaccurate or one-sided analysis of the case and their rights." *Id.* at 18 (emphases added). But, as even the ESM Parties admit, they have no evidence to support their speculation.[4] *Id.* at 20 ("ESM Parties have been unable to obtain record evidence certificateholders regarding Assured's communications about settlement."). This lack of evidence reflects that there has been no wrongdoing: The very communication the ESM Parties allege is misleading—the neutral statement Assured requested Wells Fargo post—is the type specifically allowed under the caselaw. *See Weinberger v. Kenderick*, 698 F.2d 61, 70 (2d Cir. 1982) (explaining that communication should be "neutral" and contain only "very general description[s]"). Moreover, far from raising a concern of unauthorized legal advice, the notice by Assured does not invite interested certificateholders to contact Assured's counsel but rather to contact Assured's businesspeople.

Despite their inability to demonstrate any misconduct by Assured, the ESM Parties claim that their motion adheres to the direction of the Supreme Court that restrictions on communications by parties should be rare, and "should be based on a clear record and specific

---

[4] In light of their admission that they have no evidence of any improper communications by Assured, it is truly remarkable, and plainly misplaced, for the ESM Parties to invoke this Court's power to impose "sanctions" for "misconduct" as a basis to impose restrictions on Assured in its discussions with willing certificateholders. (Mem. 16). The ESM Parties are openly speculating as to what "may" happen, with no basis to claim that anything improper has in fact happened, and this Court should not entertain their purely hypothetical motion. *Cf. Peck v. Aponte*, 880 F. Supp. 184, 185 (S.D.N.Y. 1995) ("[T]here must be definite and concrete issues involved which cannot be based on a hypothetical dispute. In the end, the question becomes whether there is a substantial controversy of sufficient immediacy and reality to warrant judicial intervention.").

findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981). The ESM Parties' nine-prong laundry list of proposed "restrictions" on Assured makes a mockery of this standard. (Mem. 23-24). These proposals, if adopted, would impose extraordinary burdens on this Court, all for the purpose of monitoring discussions that the participants have voluntarily entered into without any "specific findings" of the sort of misconduct that could give rise to the "need for [such] limitation[s]." *See Gulf Oil*, 452 U.S. at 101. Among other things, the ESM Parties call upon the Court to direct Assured to circulate a Court-approved notice reflecting the ESM Parties' "analysis"; but the ESM Parties could far more easily circulate any notice it deemed appropriate in the same manner as Assured, *i.e.*, by making a request of the Trust Administrator. Even more remarkably, the ESM Parties would have this Court monitor voice recordings of negotiations between Assured and other certificateholders through submissions of tapes by Assured every five days. It is not surprising that the ESM Parties identify no authority to support such relief.

The central premise for the ESM Parties' motion—that extraordinary Court intervention is required to protect uninformed certificateholders that do not comprehend the meaning of the Court's ruling on the motion to dismiss—is also false. Magistrate Dolinger has already found the notice of the interpleader action that Wells Fargo posted "was sufficient to place all certificateholders from that time forward on notice of the issues involved in this case." (Order & J. ¶ 5, Dec. 13, 2011 (doc. no. 125)). Nor are the other certificateholders the sort of investors who might need the protection counsel for the ESM Parties purports to offer. These certificateholders, as is generally true of investors in complex mortgage-related securities, are sophisticated entities or individuals capable not only of monitoring the case, but of protecting their rights without unsolicited, and possibly unwelcome, assistance. *See Landesbank Baden-*

9

*Wurttemberg v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 624 (S.D.N.Y. 2011).  The *pro se* defendants appearing before this Court have demonstrated as much through their submission of numerous briefs and their active participation in repeated oral arguments.

      Finally, the claim by the ESM Parties that it is somehow improper for the parties to this litigation to initiate discussions with other certificateholders is fatally undermined by the ESM Parties' own conduct, in this action and elsewhere.  For instance, the ESM Parties acknowledge in their brief that they themselves have initiated contact with other certificateholders in an attempt "to obtain record evidence." (Mem. 20) ("Since Assured refused to disclose to the ESM Parties its intended communications, the ESM Parties have attempted to obtain record evidence from other certificateholders who have contacted the ESM Parties' counsel during this litigation, through discussions with their counsel.").  As for their purported concern that Assured is in discussions with gullible unrepresented parties, the ESM Parties likewise reveal in the same passage that those certificateholders are in fact represented by counsel.  *Id*.  Moreover, one of the ESM entities itself requested that the Trustee for the transaction at issue in this litigation circulate a notice to certificateholders, and did so without Court involvement—the very conduct that the ESM Parties now claim was somehow improper when undertaken by Assured.  (Decl. of Adam M. Abensohn in Supp. of Assured's Opp'n to ESM Mot. for Relief Under Rules 23 & 83, Ex. A).  It is thus clear that the ESM Parties—far from identifying any legitimate basis to restrict Assured's communications—are attempting to impose a double standard, whereby they can speak for and to certificateholders without limitation, but Assured is precluded from doing the same.

      In sum, the ESM Parties ask this Court to assume both that Assured's communications will be false or misleading *and* that other certificateholders lack the means of protecting their

own interests. But the ESM Parties *admit* that they have no evidence whatsoever of either. The motion also rests on the plainly false premise that this is a class action or its equivalent. In the end, the ESM Parties are asking this Court to intervene in an unprecedented way, in order to "monitor" and "restrict" communications between entities that have freely elected to enter into discussions, simply because of speculation as to what "may" be said between those parties. There is no authority or doctrine to support this result, and the application should be denied.

## CONCLUSION

The ESM Parties have provided this Court with no basis on which to grant the extraordinary relief they request. For the foregoing reasons, this Court should deny the motion of the ESM Parties for relief pursuant to Fed. R. Civ. P. 23 and Fed. R. Civ. P. 83.


DATED:  New York, New York
        September 12, 2012

QUINN EMANUEL URQUHART &
   SULLIVAN, LLP


By: s/ Philippe Z. Selendy
    Philippe Z. Selendy
       philippeselendy@quinnemanuel.com
    Adam M. Abensohn
       adamabensohn@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
(212) 849-7000

*Attorneys for Financial Security Assurance, Inc. (n/k/a Assured Guaranty Municipal Corp.)*

11

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of New York by using the SDNY CM/ECF system on September 12, 2012. I hereby certify that I caused the foregoing to be deposited with the United States Postal Service on September 12, 2012, for service via First Class Mail to:

>David J. Ittah
>1500 Locust Street, Apt. 4213
>Philadelphia, PA 19102
>
>Alexander BakalAt
>34 Leonard Street, Apt. 5A
>New York, NY 10013
>
>David Visher
>28808 Cliffside Dr.
>Malibu, CA 90265

I certify that the remaining parties in the case are registered ECF users and that service will be accomplished by the SDNY CM/ECF system.

s/ Philippe Z. Selendy