UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

WELLS FARGO BANK, N.A..,

            Interpleader Plaintiff,

   -v-

ESM FUND I, LP, ET AL,

            Interpleader Defendants.

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAY 31 2013

10 Civ. 7332 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

      Interpleader Defendants ESM Fund I, LP, et al. (the "ESM Parties") timely objected to Magistrate Judge Dolinger's Report and Recommendation ("R&R"), (Dkt. No. 177), dated April 4, 2013, in which he recommends that the ESM Parties' unopposed attorneys' fees motion, (Dkt. No. 171), be granted in part. The ESM Parties object to his recommendation that, while entitled to recover additional fees for work completed between August 31, 2011, and the conclusion of litigation in December 2012, three deductions should be made from the total amount requested. The three deductions Judge Dolinger recommends are as follows: (1) a $5,765.00 deduction for time spent unsuccessfully appealing Judge Dolinger's November 3, 2011 R&R, (Dkt. No. 119); (2) a $66,116.20 deduction for "most" of the time spent unsuccessfully opposing a motion to stay filed by Cross Defendant Financial Security Assurance ("Assured"); and (3) a $54,623.75 deduction for one half of the time spent on a motion to preclude Assured from communicating with unrepresented certificate holders (the "motion to preclude"), which resulted in "some small measure of success." (R&R 6-7) In total, Judge Dolinger recommends that the ESM Parties be awarded $274,271.39 of their $402,508.55 request. For the reasons discussed below, the Court concludes that the ESM Parties were entitled to the $5,765.00 and that the fees for the time spent

1

on the motion to preclude communication should have been reduced by twenty-five, rather than fifty, percent. Except as specifically noted, the Court agrees with and adopts Judge Dolinger's Recommendation. The Court assumes familiarity with the facts and procedural history of the matter and with Judge Dolinger's R&R.

## I. Standard of Review

When a magistrate judge issues findings or recommendations, the district court "may accept, reject, or modify [them] in whole or in part." 28 U.S.C. § 636(b)(1). Pursuant to Federal Rule of Civil Procedure 54(d)(2)(D), when reviewing a magistrate judge's decision on a motion for attorney's fees, the Court will treat that motion as a "dispositive pretrial matter" and will review, *de novo*, any portions to which a party has stated a timely objection. *Pegoraro v. Marrero*, No. Civ. 0051 (AJN), 2013 WL 1448769, at *1 (S.D.N.Y. Apr. 9, 2013) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Choudhury v. Barnhart*, No. 04 Civ. 142 (RJH), 2005 WL 2592048, at *1 (S.D.N.Y. Oct. 11, 2005)). However, "new arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all." *Alston v. West*, No. 11 Civ. 8317 (AJN), 2012 WL 6629116, at * 1 (S.D.N.Y. Dec. 20, 2012) (quoting *Smith v. Hulihan*, No. 11 Civ. 2948 (HB), 2012 WL 4928904, at *1 (S.D.N.Y. Oct. 17, 2012)).

## II. Discussion

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees in common fund cases," like this one. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("While the *Arbor Hill [Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110 (2d Cir. 2008)] panel indicated

its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method."). "No matter which method is chosen, district courts should continue to be guided by the traditional criteria in determining a reasonable common fund fee, including: '(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Id.* (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122-23 (2d Cir. 2005) ("Irrespective of which method is used, the '*Goldberger* factors ultimately determine the reasonableness of a common fund fee."). However, "[r]ecognizing that economies of scale could cause windfalls in common fund cases, courts have traditionally awarded fees for common fund cases in the lower range of what is reasonable." *Wal-Mart Stores*, 396 F.3d at 122.

The ESM Parties argue that the total amount of fees sought should have been approved under either the percentage of the fund method or the lodestar method and that it was error for Judge Dolinger to "not analyze the supplemental request in view of the *Goldberger* factors." (Br. 16) They argue that all of the *Goldberger* factors weigh in favor of fully compensating them for their efforts expended in litigating, specifically, that: (1) this was a "complex case with dense contracts and . . . with an enormous financial impact;" (2) "[t]here was significant risk in the litigation;" (3) "the case was vigorously litigated by Quinn Emmanuel on behalf of Assured;" (4) although Judge Dolinger had described their representation as "at least competent," they would "contend that it was significantly better than that as evidenced by the result;" (5) "the requested total fees are minimal in comparison with the $162 million recovery -- a recovery that is 100% of

3

the amount in dispute;" and (6) public policy favors "rewarding the ESM Parties for taking action and expending their own money to preserve not just their own rights but those of all other certificateholders who benefitted from this litigation."[1] (Br. 16-17).

Prior to addressing these arguments and Judge Dolinger's R&R, it is worth noting that although the ESM Parties expend much energy lauding the overall success of their litigation, (Br. at 16-17), their rodomontade fails to mention that they have already been compensated for the bulk of the work that led to the entry of judgment in their favor. (Dkt. Nos. 119; 125 ¶6) Specifically, on December 13, 2011, the Court issued an Order and Judgment, which, in relevant part, terminated the action, granted the ESM Parties' first motion for fees, and "awarded their attorney's fees and costs, as of August 31, 2011, in the amount of $411,512.79." (Dkt. No. 125 ¶6 (Sand, J.)) This award was based on Judge Dolinger's previous R&R, in which he "concluded that a substantial amount of the time spent by counsel was warranted given both the relative complexity of the issues concerning the interpretation of the [contract], the extent of the required briefing on those issues, and the disputes that needed to be addressed regarding the terms of the judgment." (Dkt. No. 119 at 41) Judge Dolinger also noted that "the proposed fee figure reflects a very minor percentage of the asserted benefit to the insured investors of well in excess of $100 million," and that "even if we limit the calculation to the $7.2 million recovered from Assured, the fees are barely in excess of five percent, which is generally an acceptable

---

[1] To the extent that the ESM Parties' brief can be read as also objecting to Judge Dolinger's determination as to the reasonableness of the fees and hours and have submitted additional evidence to support the $700.00 per hour attorney's billing, (Def. Br. n.18), their argument is moot, given that Judge Dolinger did not in fact deduct any amount based on the hourly wages billed, and their evidentiary submission is untimely.

4

figure in most common-fund award decisions." (Dkt. No. 119 at 41 (citing, as an example, *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520-24 (E.D.N.Y. 2003))).

In short, Judge Dolinger's November 2011 R&R makes clear that -- apart from the work conducted between August 31, 2011, and December 13, 2011 -- the ESM Parties have already received payment for the successful efforts expended to secure the beneficial result for the certificateholders and that these previous efforts were accounted for in determining that the original award was reasonable. (Dkt. No. 119) While the Court does not disagree with the parties' contention that much of the work that they did during the non-compensated pre-judgment and post-judgment periods "inured to the benefit of all uninsured certificateholders of the trust," (Dkt. No. 171 at 4), the underlying analysis of the risks and success for this period, and in particular for the period after this Court entered judgment in their favor, is inherently different. Accordingly, the Court will first address the ESM Parties' contention that their supplemental motion for attorneys' fees should have been approved in full based on their overall success and then turn to Judge Dolinger's three deductions.

a. <u>The ESM Parties are Not Entitled to Blanket Approval of their Fees Application</u>

The award of attorneys' fees in common fund cases is a "salient exception" to the "rule in this country that litigants are expected to pay their own expenses." *Goldberger*, 209 F.3d at 47 (citing *Alyesaka Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Id.* (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). In these cases, however, because neither defense counsel nor the class members have a real incentive to oppose the plaintiff's requested fees, "the fee award should be assessed based on scrutiny of the unique circumstances of each case, and a 'jealous regard to the

5

rights of those who are interested in the fund.'" *Goldberger*, 209 F.3d at 52-53 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)) (citing *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 ("[D]istrict court was to act 'as a fiduciary who must serve as a guardian of the rights of absent class members."); *Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572 ("Defendants, once the [common fund] amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee."); *McDaniel*, 595 F.3d at 419 (quoting *Goldberger*, 209 F.3d at 53 ("[Class members] have no real incentive to mount a [fees] challenge that would result in only a 'miniscule' *pro rata* gain from a fee reduction.").

To blindly allow any and all remotely reasonable post-judgment billing in a common fund case based on the parties having received a favorable judgment would plainly violate the Court's duty "to act as a fiduciary" and as "a guardian of the rights of absent class members." *Grinnell Corp.*, 560 F.2d at 1099, *abrogated on separate grounds by Goldberger*, 209 F.3d 40. Indeed, after a district court enters judgment in a common fund case -- and particularly where the judgment is substantial or was "ultimate[ly] success[ful] on the merits," (Br. 19 (quoting *U.S. Fideltiy & Guaranty Co. v. Braspetro Oil*, 226 F. Supp. 2d 458, 564 (S.D.N.Y. 2002)) -- there is an increased incentive on the part of the prevailing plaintiff to incur costs (as the only remaining risk is reversal) and a decrease in the already low "incentive for the defendants to contest the size of the fee," (as the fee is paid out of the fund, not by defendants themselves). *McDaniel v. County of Schenectady*, 595 F.3d at 417. Here, the fact that "[n]o party to this litigation has challenged the amount of the ESM Parties' legal fees and expenses sought in this motion," (Dkt. No. 178), does not, as they argue, serve as proof of the reasonableness of their fee application; if anything, it serves as proof that this case falls within the class of cases where the Court must stringently review the billing. *See McDaniel*, 595 F.3d at 417 (noting that as a result of the lack

6

of objections in common fund cases, "the district judge "los[es] the benefit of the adversarial process, which may . . . inform[] and sharpen[] the judicial inquiry" (alterations in original)); *Goldberger*, 209 F.3d at 53 ("It is not without significance that when [lead counsel for plaintiffs on appeal] stood up at oral argument to petition for a bigger slice of his clients' recovery, no one sat adjacent to him at opposing counsel's table."). By this same token, the ESM Parties' assertion that the fees are appropriate because they "are the actual fees negotiated by the parties and that have been or will be paid by the ESM parties," (Dkt. No. 171), is false factually (to the extent that fees are compensable they will be paid out of the common fund, not by the ESM Parties), and largely irrelevant to the determination of the reasonableness of the fees sought. *See McDaniel*, 595 F.3d at 419 (quoting *Goldberger*, 209 F.3d at 53 ("[Class members] have no real incentive to mount a [fees] challenge that would result in only a 'miniscule' pro rata gain from a fee reduction.").

Accordingly, although Judge Dolinger did not specifically address each *Goldberger* factor, he properly assessed the reasonableness of the ESM Parties' application based on the success of their efforts and in accord with binding Second Circuit and Supreme Court precedent. (Dkt. Nos. 119 at 23-25; 177) Indeed, "[t]he Supreme Court has held that 'the most critical factor in determining the reasonableness of a fee award is the degree of success obtained.'" *Adorno v. Port Auth. of N.Y. and N.J*, 685 F. Supp. 2d 507, 510-13 (S.D.N.Y. 2010) (Chin, J.) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (some internal citations and quotations marks omitted)). "Where a plaintiff achieves only limited or partial success, an adjustment may be made, even where the plaintiff's unsuccessful claims were nonfrivolous and asserted in good faith." *Id.* (citing *Hensley v. Eckerhart*, 461 US. 424, 436 (1983)). "The court may exclude hours spent on 'severable unsuccessful claims,'" *Green v. Torres*, 361 F.3d 96, 98 (2d Cir.

2004), but if these claims "were interrelated and required essentially the same proof, a reduction in the number of hours is not appropriate." *Adorno*, 685 F. Supp. 2d at 512 (internal quotation marks omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997)). On this basis, Judge Dolinger determined that three deductions were appropriate. The Court will address these in order.

b. <u>Time Spent Objecting to the November 2011 R&R</u>:

Judge Dolinger first determined that the fees award should be reduced by $5,765.00 for the 15.8 hours spent objecting to his November 2011 R&R. His decision was based on a determination that "[u]ltimately the District Court overruled these objections and adopted [his] fee recommendations." (R&R 6) As the ESM parties argue, (Br. 20-21), this conclusion is incorrect factually. In their joint objection to the November 2011 R&R, the ESM Parties did not object to Judge Dolinger's decision to deduct any fees, but instead requested "an increase in the fee amount awarded to the ESM Parties to $411,512.79 (i.e., a 5% reduction as opposed to 10%)." (Dkt. No. 120 at 2 (emphasis in original)) And, after reviewing Judge Dolinger's November 2011 R&R, the Court awarded the ESM Parties "their attorneys' fees and costs, as of August 31, 2011, in the amount of $411,512.79." (Dkt. No. 125 at ¶6 (Sand, J.)) The record shows, then, that the ESM Parties were successful on this motion, and, having reviewed this portion of their motion *de novo*, the Court determines that the time spent opposing Judge Dolinger's 2011 R&R was reasonable and compensable. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) ("[A]ttorneys' fees for the preparation of the fee application are compensable."); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548 (GBP), 2008 WL 4613752, at * 12 (S.D.N.Y. Oct. 17, 2008) (collecting cases). For these

reasons, the Court disagrees with Judge Dolinger's recommendation that this sum be deducted and instead awards the ESM Parties the additional $5,765.00.

### c. Time Spent Opposing the Motion to Stay

Judge Dolinger next determined that the fees award should be reduced by $66,116.20 for the 145.2 hours that the ESM Parties spent opposing Assured's successful motion for a stay of judgment pending appeal. The ESM Parties argue that his conclusion is incorrect as a matter of law, because they should not have their award reduced in light of their overall success, and as a matter of fact, because they "had a good faith basis for concluding that their opposition to Assured's stay motion could succeed and provide a significant benefit to all shareholders." (Br. 21) These arguments lack merit, the deduction was appropriate, and the Court adopts in full this portion of the Judge Dolinger's R&R. (R&R 6-7)

The hours spent opposing the motion to stay were properly excluded given that the ESM Parties were unsuccessful on their motion and because the Court, in an earlier opinion, determined that there would be no substantial harm to the shareholders if the motion was granted. (Dkt. No. 152) On July 24, 2013, the Court issued an order, (Dkt. No. 152), affirming Judge Dolinger's April 2012 R&R, (Dkt. No. 145), which recommended granting Assured's motion to stay. In that order, the Court concluded that the only potential harm to the shareholders was "speculat[ive]" and would at most result in their being "temporarily disadvantaged in their investment position." (Dkt. No. 152, 8) In support of this unsuccessful, minimally beneficial motion, the ESM Parties submitted a 17-page memorandum of law, which, while fact-intensive, required the rote application of well-established principals of law. (Dkt. No. 134) Given the minimal potential benefit or resultant harm to the shareholders, and in light of the simplicity of this issue, the Court would be reticent to award 145.2 hours worth of fees to

counsel even had they been successful. But the ESM Parties were not successful, and, although the issue ties in with the overall-successful litigation, given that the opposition to this motion neither had nor could have had an impact on the already successful and compensated portion of the litigation, it is easily severable and thus amenable to exclusion. *See Green*, 361 F.3d at 98.

For these reasons, and the reasons discussed in Judge Dolinger's R&R, the Court concludes that Judge Dolinger correctly excluded the hours spent opposing Assured's motion for a stay and adopts that portion of his Report and Recommendation. (R&R 6-7) The ESM Parties are not entitled to recover this sum, $66,116.20.

    d. The ESM Parties' Motion to Limit or Monitor Communications

Finally, Judge Dolinger determined that the fees should be reduced by $54,623.75, representing a fifty percent decrease in the amount the ESM Parties requested for 204 hours of work that they spent pursuing their moderately successful motion to preclude. (R&R 7-8) He concluded that the deduction was appropriate because "[t]he ESM Parties were not successful in obtaining the relief they were seeking, which was, in essence, participation in or monitoring of any communication between Assured and other certificate holders," and the "project involved a fairly gargantuan investment of attorney time, totaling 204 hours, and generated equally impressive fees of $109,247.50." (R&R 7)

The ESM Parties argue that his conclusion is incorrect because their motion "was filed for the benefit of all certificateholders" and was not entirely unsuccessful because it "led to a number of salutary effects." (Br. 23) These salutary effects, they argue, are that: "(1) it caused Assured to issue a Revised Notice to certificateholders that eliminated or revised a number of statements from the prior notice that the ESM Parties contended were false or misleading; (2) it stalled Assured's settlement communications with non-party certificated holders and therefore

10

likely prevented some certificateholders from ceding to Assured 50% of the funds that were distributed to them shortly thereafter . . . ; and (3) as the Magistrate Judge acknowledged, it permitted the ESM Parties to post a competing notice to temper any potential confusion of certificateholders by Assured." (Br. 22-23) Finally, the ESM Parties disagree with Judge Dolinger's assessment of their time spent, and argue that the hours were appropriate because of the "complex legal and factual issues involved." (Br. 24)

As a preliminary matter, the Court notes that none of the supposed salutary effects were argued or discussed in the ESM Parties' motion for supplementary fees. (Dkt. No. 171) These undoubtedly constitute "new arguments and factual assertions," that "cannot properly be raised for the first time in objections to the R&R, and indeed may not be deemed objections at all." *Alston*, 2012 WL 6629116, at *1. Given the lack of success on this motion and considering that this portion of the fees constitutes almost one quarter of the overall fees requested in this motion, and almost one eighth of the overall fees requested for counsel's work on this matter, some justification should have been provided in the parties' motion and supporting documents. Absent such justification, the Court concludes that while the motion itself may have been intended to benefit the class as a whole, given the "small measure of success" on their motion and the "hugely excessive" amount of time devoted to this application, a reduction is appropriate. (R&R 8) However, in light of the overall success, the generally reasonable hours spent and fees incurred, and the fact that certain of the activities in this final category would have required attorney time regardless whether the motion was filed -- the Court determines that a twenty-five, rather than fifty, percent reduction is appropriate ($27,311.88 rather than $54,623.75). *See Adorno*, 685 F. Supp. 2d at 512.

11

III. Conclusion

For the reasons described above, the Court grants the ESM Parties' Motion for Supplemental Attorneys' Fees in part and denies it in part and adopts Magistrate Judge Dolinger's Report and Recommendation in part. Of the total $394,584.00 in fees sought, the Court concludes that $99,193.08 should be deducted, for a final award of $295,390.92.

This decision resolves Dkt. No. 170.

Dated: May 31, 2013
New York, New York

_____
ALISON J. NATHAN
United States District Judge

12